United States Courts
Southern District of Texas
F I L E D

MAY 2 4 2022

Nathan Ochsner, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---

*In re* Application of

CFE International LLC,

              Applicant,

JG Energy Consulting Corporation,

              Respondent.

---

Case No.

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
APPLICATION FOR ORDER
PURSUANT TO 28 U.S.C. § 1782
PERMITTING CFE
INTERNATIONAL LLC TO ISSUE A
SUBPOENA FOR THE TAKING OF
A DEPOSITION AND THE
PRODUCTION OF DOCUMENTS
FROM JG ENERGY CONSULTING
CORPORATION

FILED EX PARTE AND UNDER SEAL

REED SMITH LLP
811 Main Street, Suite 1700
Houston, TX 77002
(713) 469-3800

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

*Attorneys for Applicant CFE International LLC*

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 3

I.      JG Energy ............................................................................................................ 3

II.     The Other Key Players ....................................................................................... 4

        A.      The Relationship Among Calhoun, Gutierrez, and Turrent ............................ 5

III.    The Mexican Criminal Proceeding ...................................................................... 7

IV.     Why Discovery Is Needed ................................................................................... 9

        A.      The Waha Connector Agreements ................................................................. 10

        B.      Other Actual or Potential Transactions Among the Same Entities and
                People Involved in the Waha Connector Agreements ..................................... 10

                1.      Masco Trading Services ("MTS") ........................................................ 10
                2.      Advisory Group LLC .............................................................................. 12
                3.      The Pomelo Connector .......................................................................... 12
                4.      The Waha Supply Agreement ................................................................ 13
                5.      The South Texas Supply Agreement ..................................................... 15

        C.      Background Information about the Business of JG Energy ........................... 16

SECTION 1782 ENTITLES CFEI TO TAKE DISCOVERY FROM JG ENERGY ......... 16

I.      CFEi's Application Meets Section 1782's Threshold Requirements ................... 16

II.     CFEi's Application Also Meets the Discretionary Factors Courts Consider in
        Granting Section 1782 Applications ................................................................... 19

        A.      JG Energy Is Not a Participant in the Mexican Criminal Proceeding ........... 19

        B.      The Mexican Authorities Are Receptive to U.S. Judicial Assistance ............. 20

        C.      This Application Is an Attempt to Obtain Probative and Relevant
                Evidence for a Foreign Proceeding, and in No Way Circumvents
                Foreign Proof-Gathering Restrictions .......................................................... 21

        D.      The Discovery Sought Is Not Unduly Intrusive or Burdensome ................... 22

CONCLUSION ............................................................................................................... 22

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abely* v. *Aeterna Zentaris Inc.*,
    No. 12 Civ. 4711 (PKC), 2013 WL 2399869 (S.D.N.Y. May 29, 2013). ..............................21

*Ecuadorian Plaintiffs* v. *Corp.*,
    619 F.3d 373 (5th Cir. 2010) ...................................................................................................21

*In re Application for an Ord. for Jud. Assistance in a Foreign Proceeding in the
    Lab. Ct. of Brazil,*
    466 F. Supp. 2d 1020 (N.D. Ill. 2006) .....................................................................................20

*In re Ex Parte Application of CFE International LLC,*
    No. 22-mc-00365-LY-ML (W.D. Tex. May 4, 2022) .................................................................6

*In re Application of Eurasian Bank Joint Stock Co.,*
    2015 WL 6438256 (N.D. Tex. Oct. 21, 2015) .........................................................................21

*Matter of Application of O2CNI Co., Ltd.,*
    2013 WL 5826730 (N.D. Cal. Oct. 29, 2013) .........................................................................18

*In re Application of Qumma,*
    2005 WL 937486 (S.D.N.Y Apr. 22, 2006) .............................................................................21

*In re Caceres,*
    2020 WL 2523120 (S.D. Miss. May 18, 2020) .......................................................................19

*Chevron Corp.* v. *3TM Consulting, LLC,*
    2010 WL 8814519 (S.D. Tex. Apr. 5, 2010) ...........................................................................23

*In re Children's Inv. Fund Found. (UK),*
    363 F. Supp. 3d 361 (S.D.N.Y. 2019)......................................................................................18

*Intel Corp.* v. *Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004).............................................................................................3, 18, 20, 21

*Kestrel Coal Ply, Ltd.* v. *Joy Global Inc.,*
    362 F.3d 401 (7th Cir. 2004) ..................................................................................................20

*LEG Q LLC* v. *RSR Corp.,*
    No. 3:17-CV-1559-N-BN, 2017 WL 3780213 (N.D. Tex. Aug. 31, 2017) ............................17

*In re Microsoft Corp.,*
    428 F. Supp. 2d 188 (S.D.N.Y. 2006)......................................................................................22

ii

## TABLE OF AUTHORITIES
### (Continued)

<u>Page(s)</u>

*Minatec Fin. S.A.R.L.* v. *SI Group Inc.*,
    No. 1:08-CV-269, 2008 WL 3884374 (N.D.N.Y Aug. 18, 2008) ............................................22

*In re Request for Judicial Assistance from the Consumer Court of Istanbul in Istanbul, Turkey*,
    2021 WL 6750936 (W.D. Tex. June 11, 2021) ......................................................................18

*In re Sarrio S.A.*,
    173 F.R.D. 190 (S.D. Tex. 1995) ..........................................................................................21

**Statutes**

28 U.S.C. § 1782 ........................................................................................................ *passim*

CFE Law (2014) ...................................................................................................................7

Mexican National Criminal Procedure Code ..............................................................18, 19, 21

## INTRODUCTION

CFE International LLC ("CFEi"), a Texas-based natural gas company and wholly owned subsidiary of the state-owned electric utility of Mexico, Comisión Federal de Electricidad ("CFE"), seeks, through this application (the "Application"), an order pursuant to 28 U.S.C. § 1782 granting CFEi discovery from JG Energy Consulting Corporation ("JG Energy") for use in a foreign criminal proceeding.[1] That proceeding is pending before the Attorney General of Mexico and filed with the Office of the Special Anti-Corruption Prosecutor in Mexico City, Mexico (the "Mexican Criminal Proceeding").

The Mexican Criminal Proceeding involves claims that, in December 2016, Javier Gutierrez Becerril ("Gutierrez"), a former executive of CFE and former Chief Operating Officer of CFEi, and Guillermo Turrent Schnaas ("Turrent"), a former executive of CFE and former Chief Executive Officer of CFEi, as public servants, violated the Mexican Constitution and Mexican criminal and procurement laws by improperly awarding a U.S. company, WhiteWater Midstream LLC and its subsidiaries and affiliates (collectively, "WWM"), massive natural gas contracts to build, transport capacity, and market gas on Texas pipelines whose construction was sponsored by CFE (the "Waha Connector Agreements"). (Declaration of Fernando Aponte Martínez ("Aponte Decl.") ¶¶ 30–33). These contracts, with an estimated revenue to WWM of hundreds of millions of dollars over the lifetime of the deal, were awarded by Gutierrez and Turrent primarily for the benefit of WWM and to the detriment of Mexico and its people. *Id.*

---

[1]   Accompanying this application is CFEi's motion to file all papers in this matter *ex parte* and under seal until the requested subpoenas are served. CFEi respectfully requests that the Court grant that motion for all the reasons stated therein. *See* Motion to File *Ex Parte* and Under Seal.

WWM, the beneficiary of the improperly awarded Waha Connector Agreements at issue in the Mexican Criminal Proceeding, was formed by an individual, Matthew Calhoun ("Calhoun"), WWM's co-founder and President of Commercial Operations, who has longstanding personal and professional relationships with Gutierrez and Turrent.

JG Energy, from which CFEi now seeks discovery in aid of the Mexican Criminal Proceeding, is a personal consulting firm that Gutierrez formed in January 2014, three months before he joined CFE in April 2014. (Declaration of Sam Anson ("Anson Decl.") ¶ 15). At the same time that Gutierrez was working at CFE and negotiating the Waha Connector Agreements and the precursors to those agreements, he received over $250,000 in income through JG Energy. Gutierrez was also instrumental in causing CFEi to award lucrative natural gas supply contracts to WWM shortly after the Waha Connector Agreements. CFEi seeks to use the subpoenas requested in this Application to investigate whether JG Energy served as a conduit for improper payments to Gutierrez.

The discovery sought herein is targeted to determine whether JG Energy was a conduit for payments to Gutierrez for steering CFE and CFEi business to WWM. CFEi requests information about any proposed or finalized projects or transactions, including the Waha Connector Agreements and any other natural gas pipeline projects, with WWM, CFE, or CFEi, their principals, or any entity affiliated with them, and all payments received by JG Energy for any such projects or transactions.

This information goes to the heart of the Mexican Criminal Proceeding: evidence relating to the nature of JG Energy, its sources of income, and the benefits Gutierrez may have received through this personal consulting firm for proposed or finalized WWM, CFE, or CFEi transactions or projects would aid the Mexican prosecutors in their investigation of the

procurement process Gutierrez and Turrent unlawfully failed to follow in awarding the Waha Connector Agreements to WWM.

This Application meets each of Section 1782's three statutory requirements:   JG Energy "resides" or can be "found" in this district; the discovery sought is "for use" in a foreign proceeding; and CFEi is an "interested person" in that proceeding.   28 U.S.C. § 1782; *see also Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 256–59 (2004).

Moreover, the four discretionary factors a court considers in determining whether to grant a Section 1782 request for discovery, *id.* at 264–65, also all support the granting of the Application.   As explained below, JG Energy is not a participant in, nor does it appear in, the Mexican Criminal Proceeding.   The Mexican courts are receptive to U.S. federal-court assistance under Section 1782.   CFEi's discovery requests do not attempt to circumvent foreign proof-gathering restrictions, as they are a good-faith effort to obtain probative evidence.   Nor are they unduly burdensome, as they are tailored to obtain information that is of substantial importance and interest to the Mexican Criminal Proceeding and would be permitted under the Federal Rules of Civil Procedure, which govern discovery produced pursuant to Section 1782 unless the court prescribes otherwise.   28 U.S.C. § 1782(a).

CFEi thus respectfully requests that the Court grant this Section 1782 Application.

## FACTUAL BACKGROUND

### I.   JG Energy

CFEi seeks documents from JG Energy, an entity formed on January 13, 2014 by Gutierrez in Texas.   (Anson Decl. ¶ 15).   Gutierrez is its president.  *Id.*   JG Energy's former address, as listed in corporate formation filings, as well as 2015 and 2016 public information reports, was 2455 Dunstan Rd., Suite 336, Houston, TX 77005 (the "Dunstan Road Address").  *Id.*

This is Calhoun's personal address as well as the address at which numerous companies of Calhoun's were also registered. (Anson Decl. ¶¶ 30–34). Publicly available information confirms that JG Energy's current principal place of business is 7507 Cuadro Lane, Houston, TX 77055. (Anson Decl. ¶ 15).

JG Energy declared income of $54,000 in 2015 and $202,300 in 2016 to the IRS. The source of this income is unknown. Gutierrez was employed by CFE during these years. (Anson Decl. ¶ 16).

## II. The Other Key Players

CFEi is a U.S.-based natural gas company and wholly owned subsidiary of CFE. (Aponte Decl. ¶¶ 9–10, 20). CFEi was formed in 2015, with formal operations commencing in 2016. *Id.* Its principal place of business and headquarters are in Houston, Texas. (Aponte Decl. ¶ 4). CFEi operates as the international trading arm of CFE, procuring natural gas in the U.S. market for transport to Mexico. (Aponte Decl. ¶ 10). In 2013, the prior Mexican administration instituted a constitutional reform that privatized the energy sector, opening it up to private investment and competition for the first time in over seventy years. (Aponte Decl. ¶ 6). It was at this time that Gutierrez and Turrent joined CFE to help the company take advantage of the energy industry's expanded reliance on natural gas, including from U.S. sources, which is used to power the production of electricity in Mexico. (Aponte Decl. ¶ 8).

Gutierrez joined CFE in April 2014, the same month that the prior Mexican president submitted the energy reform bill to Congress for approval, and served as Subdirector of Modernization there through February 2017. (Aponte Decl. ¶ 8). He also served as COO of CFEi from June 2015 until December 2018. (Aponte Decl. ¶ 31). Turrent served as Director of Modernization at CFE from January 2013 through September 2016. He was also the CEO of CFEi from June 2015 until December 2018. *Id.*

4

WWM is a limited liability company that was incorporated in Delaware in March 2016. (Anson Decl. ¶ 18). Its formal operations began in June 2016. WWM is a midstream service provider that operates in the gas delivery and sale business.[2] Its principal place of business is Austin, Texas. *Id.* After engaging in a series of negotiations and transactions with CFE and CFEi through Antaeus Group, a Calhoun-affiliated entity of which Gutierrez was a principal, Calhoun formed WWM with Christer Rundlof ("Rundlof"). (Anson Decl. ¶ 18).

## A.     The Relationship Among Calhoun, Gutierrez, and Turrent

Calhoun's relationship with Gutierrez and Turrent began years prior to CFE's award to WWM of the Waha Connector Agreements at issue in the Mexican Criminal Proceeding. Calhoun had worked closely with Turrent in the U.S. energy industry over a decade prior to these contracts. From 2000 to 2004, Turrent served as Senior Vice President at Shell Energy, while Calhoun worked as a trader. (Anson Decl. ¶ 28). Notably during this period, both Calhoun and Turrent were implicated in a 2002 Federal Energy Regulatory Commission investigation into allegedly fraudulent activity within Calhoun's trading group. (Anson Decl. ¶ 29).

An Antaeus Group presentation, dated as of the second quarter of 2013, lists Gutierrez as a "principal" of Antaeus Group, along with Calhoun and an individual named Mark Bayse. The presentation provides an Antaeus Group email address for Gutierrez and proposes for Antaeus Group to co-develop a liquefied natural gas project with CFE in Sinaloa, Mexico. (Anson Decl. ¶¶ 17, 27). This presentation clearly shows the close linkage between Antaeus Group, Calhoun, and Gutierrez.

---

[2]   Midstream natural gas companies operate the pipeline facilities that process, transport, and sell gas downstream from natural gas producers to other consumers or midstream players.

Moreover, public filings for numerous entities associated with Gutierrez, Turrent, and Calhoun indicate that they were closely affiliated with each other, both at the time of the Waha Connector transaction and for years prior to it. The Dunstan Road Address, at which JG Energy was listed in numerous public filings, is also associated with Mexican Energy Advisors Corp., an entity that Gutierrez and Turrent controlled, and with Antaeus Group and multiple real estate holding companies controlled by Calhoun. (Anson Decl. ¶¶ 30–34).

It is against this backdrop of a close, longstanding relationship among Calhoun, Gutierrez, and Turrent that Calhoun, through Antaeus Group (of which Gutierrez was also a principal) sought numerous business opportunities with CFE and CFEi, eventually culminating in Turrent's and Gutierrez's awarding the Waha Connector Agreement to Calhoun's newly formed company, WWM, in contravention of Mexican procurement laws. While Gutierrez was working at CFE and negotiating the Waha Connector Agreements and the precursors to those agreements, he received substantial income through JG Energy. (Anson Decl. ¶ 16). This raises the possibility that JG Energy may have played a role as a conduit for payments to Gutierrez associated with the improper award of the Waha Connector Agreements to WWM. Thus, as discussed below, information about the communications, transactions, and money transferred between JG Energy and WWM, CFE, and CFEi, their principals, or any entity affiliated with them, would help advance the efforts of the Mexican authorities to investigate the circumstances surrounding the award of the Waha Connector Agreements to WWM.

The U.S. District Court for the Western District of Texas has granted an application seeking related discovery in connection with the Mexican Criminal Proceeding. *See In re Ex Parte Application of CFE International LLC*, No. 22-mc-00365-LY-ML (W.D. Tex. May 4, 2022) ("Antaeus Group Order").

### III. The Mexican Criminal Proceeding

After CFE's and CFEi's management changed with a new Mexican governmental administration, CFEi's current officers, through a newly appointed Chief Compliance Officer in December 2020, learned that Gutierrez had, in February 2017, executed a formal assignment of several U.S.-based CFE contracts to CFEi without proper power of attorney and public notarization, a significant discrepancy in Mexico's formal legal system. (Aponte Decl. ¶¶ 30–33). This discovery prompted a review of the contracts assigned, which included the Waha Connector Agreements, as well as a review of the prior management's business conduct. Through this process, CFEi learned of suspect irregularities in how and on what terms the Waha Connector Agreements were awarded to WWM. *Id.*

The primary discovery of CFEi's current management was that, in December 2016, key former CFEi executives, including Gutierrez and Turrent, on behalf of CFE, improperly awarded the Waha Connector Agreements, valued at hundreds of millions of dollars, to Calhoun's company, WWM, without complying with the strict Mexican constitutional and criminal procurement regulations that govern public contracts. *Id.*[3] Calhoun and Rundlof were the

---

[3] CFE and its employees are governed by constitutional, criminal, and entity-specific laws that apply to public entities and public servants. (Aponte Decl. ¶¶ 14–18). In addition to general Mexican tender and procurement laws that establish obligations for all public sector supply and service contracts, they are also subject to a Mexican federal law, the CFE Law (2014), which mandates specific tender and procurement procedures for CFE and its affiliates. (Aponte Decl. ¶¶ 15–16). CFE and CFEi procurement procedures are further regulated by detailed binding tender guidelines issued, and periodically updated, by CFE's Board of Directors. (Aponte Decl. ¶ 18).

The CFE Law also prohibits CFE from entertaining proposals from, or entering into contracts with, individuals or entities that may represent a conflict of interest, and requires that its employees at all times act with honesty and transparency in the exercise of their functions, including when entering into transactions affecting public assets. (Aponte Decl. ¶¶ 15, 33).

Mexico's anticorruption laws (then and current) also provide for obligations that govern public servants' management of public resources, including prohibitions against conflicts of interest and transparency requirements. (Aponte Decl. ¶ 17).

principal negotiators for WWM and its affiliates. The contracts involved several agreements that included WWM's obligation to construct a connector pipeline for CFE—the Waha Connector—and to market capacity on, and transport large volumes of natural gas via, this pipeline from West Texas to one of CFE's pipeline header systems called the Waha Header.[4]  *Id.*

Prior to awarding the contracts, CFE was obligated to undergo and document a public tender process pursuant to Mexican constitutional and criminal laws. (Aponte Decl. ¶¶ 14–18). However, in contravention of this process, CFE did not seek or receive bids from other entities before committing to award the massive contracts to WWM. (Anson Decl. ¶¶ 71–80). Moreover, WWM lacked the requisite industry experience and credit history that would have qualified it to enter into contracts with such large natural gas volume, term length, and value. (Aponte Decl. ¶ 32). At the time the contracts were awarded to WWM, Calhoun and Rundlof had formed the entity just months prior, in March 2016. *Id.* In addition, the terms of the agreements unfairly benefitted WWM to the detriment of CFE and CFEi, and at the expense of Mexican public assets and Mexican consumers. (Aponte Decl. ¶ 32).

In August 2021, in accord with its obligations under Mexican criminal law to report likely criminal acts, and as a victim whose legally protected public assets were harmed by the contracts procured through such criminal acts, CFEi reported suspected violations of Mexican procurement and criminal anti-corruption laws to the Attorney General of Mexico. (Aponte Decl. ¶¶ 19–20, 34)

In response to CFEi's criminal complaint, the Office of the Mexican Special Anti-Corruption Prosecutor in Mexico City opened an investigation into Gutierrez's and Turrent's allegedly criminal abuses of power, which is still ongoing. (Aponte Decl. ¶ 35). CFEi has

---

[4] These contracts were among the contracts later assigned in early 2017 to CFEi. (Aponte Decl. ¶ 30).

cooperated, and intends to continue cooperating, with this investigation by providing relevant information to the prosecution in connection with the proceeding. *Id.*

## IV. Why Discovery Is Needed

The allegations underlying the Mexican Criminal Proceeding concern Gutierrez's and Turrent's award of the Waha Connector Agreements to WWM, an unqualified Calhoun-founded entity, in violation of Mexican procurement law. CFEi, through this Application, seeks discovery from Gutierrez's personal consulting firm, JG Energy, through which Gutierrez received significant amounts of unexplained income, while working for CFE and negotiating the Waha Connector Agreements and other agreements among the same entities and people involved in the Waha Connector Agreements. Through the subpoenas requested in this Application, CFEi seeks to investigate whether JG Energy may have been a conduit for payments to Gutierrez for steering CFE and CFEi business to WWM.

All the discovery CFEi seeks from JG Energy is designed to obtain information about the transactions between CFEi and WWM at the heart of the Mexican Criminal Proceeding and other relevant aspects of the relationship and flow of income among CFE, CFEi, WWM, JG Energy, and these entities' principals or any entity affiliated with them. This discovery would help uncover and explain the course of conduct of Gutierrez and Turrent leading up to, during, and following their circumvention of Mexican procurement law in connection with the Waha Connector Agreements.

CFEi requests an order permitting it to serve a subpoena on JG Energy requesting testimonial and documentary discovery relating to (1) JG Energy's involvement in, and any payments received by JG Energy related to, any projects or transactions, including but not limited to the Waha Connector Agreements and any other natural gas pipeline projects, whether completed or not, involving WWM, CFE, or CFEi, their principals, or any entity affiliated with them, for

which JG Energy provided services, received payments of any kind, or about which JG Energy received any information (Doc. Requests 1–5 and Dep. Topics 2–5); and (2) background information about the business of JG Energy (Dep. Topic 1).

### A.      The Waha Connector Agreements

CFEi seeks discovery from JG Energy about the transaction at the core of the Mexican Criminal Proceeding—the Waha Connector Agreements.  Discovery from JG Energy about this transaction is likely to reveal relevant information about Gutierrez's and Turrent's compliance, or lack of compliance, with Mexican procurement laws and their motivations in awarding the Waha Connector Agreements to WWM, including whether Gutierrez may have benefited personally from the transaction through JG Energy.  (*See* Aponte Decl. ¶¶ 30–34).

### B.      Other Actual or Potential Transactions Among the Same Entities and People Involved in the Waha Connector Agreements

In addition to the Waha Connector Agreements, CFEi seeks to obtain information about JG Energy's involvement in any other project or transaction, including but not limited to any other natural gas pipeline projects, whether completed or not, involving WWM, CFE, or CFEi, their principals, or any entity affiliated with them.  These include, but are not limited to, Masco Trading Services, Advisory Group, the Pomelo Connector, the Waha Supply Agreement, and the South Texas Supply Agreement.  These transactions were, like the Waha Connector Agreements, attempts by Calhoun, Gutierrez, and Turrent to award Calhoun and his entities (including Antaeus Group, of which Gutierrez was a principal) substantial CFE business or interests in CFE-sponsored pipelines.

#### 1.      Masco Trading Services ("MTS")

In 2013, Calhoun established Masco Trading Services ("MTS") in Texas.  MTS was 51% owned by Antaeus Group and 49% owned by an affiliate of MasTec Inc., a Miami-based

engineering and construction conglomerate. (Anson Decl. ¶¶ 39–40). The same year MTS was formed, Calhoun and CFE began negotiations for MTS to manage and supply CFE's U.S. natural gas business. (Anson Decl. ¶ 41).

In April 2015, CFE and MTS entered into a Memorandum of Understanding ("MoU") to form a joint venture between the two parties wherein MTS would supply natural gas to CFE at a pipeline system in West Texas—obligations closely resembling those later assumed by WWM in the Waha Connector Agreements. (Anson Decl. ¶ 41). (This CFE-MTS joint venture was never formed.) (Anson Decl. ¶ 47). Significantly, Turrent and Gutierrez pursued this proposed joint venture with Calhoun despite MTS's having limited personnel and no real industry experience. (Anson Decl. ¶ 43). Further, the MoU states that MTS, Calhoun (and potentially Gutierrez through Antaeus Group) held a stake in two CFE-sponsored pipelines—the Trans-Pecos Trail Pipeline ("TPP") and the Comanche Trail Pipeline ("CTP")—which supply CFE with natural gas from West Texas into Mexico. (Anson Decl. ¶ 44). Yet, CFEi has been unable to uncover any evidence that Calhoun or MTS contributed anything of value to earn interests in these pipelines. *Id.* Notably, Gutierrez did not disclose Antaeus Group's interest in the transaction to CFEi's outside counsel in representations about the transparency of the TPP and CTP contracting processes, which indicates this was something Gutierrez sought to conceal. (Anson Decl. ¶ 45).

Discovery from JG Energy about MTS is likely to illuminate this example of an attempted precursor to the alleged criminal activity pertaining to the Waha Connector Agreements that is being investigated by Mexican authorities. The MTS transaction was not in CFE's best interest and instead appears to have been designed to benefit Calhoun and potentially Gutierrez, through their stakes in Antaeus Group. It may also uncover how Gutierrez, through JG Energy, may have benefited personally from these negotiations.

### 2. Advisory Group LLC

A few months after the 2015 MTS negotiations described above, Gutierrez and Turrent again attempted to arrange for Calhoun to provide CFE with natural gas supply and manage CFEi's U.S. trading and pipeline operations, this time through an entity named Advisory Group LLC ("Advisory Group"). (Anson Decl. ¶¶ 47–48).

Gutierrez and Turrent attempted to persuade CFE's Board to approve a $51 million contract with Advisory Group over bids from British Petroleum and Goldman Sachs—two established industry giants—despite the fact that Advisory Group did not yet exist and had no infrastructure, personnel, or natural gas industry experience. (Anson Decl. ¶¶ 49, 53). Antaeus Group was to own and control Advisory Group, which also shared the Dunstan Road Address with JG Energy. (Anson Decl. ¶¶ 48, 50). Ultimately, the CFE Board rejected this proposal. (Anson Decl. ¶ 55).

The attempt by Calhoun, Gutierrez, and Turrent to steer business to Advisory Group is another precursor to the Waha Connector Agreements, and discovery relating to it from JG Energy is likely to shed light on the alleged criminal conduct at issue in the Mexican Criminal Proceeding and benefits Gutierrez may have received from it through JG Energy.

### 3. The Pomelo Connector

A few months after the CFE Board rejected the Advisory Group proposal, Gutierrez and Turrent orchestrated a complicated four-way transaction in January 2016 in another attempt to secure business for Calhoun. (Anson Decl. ¶¶ 56, 60). As part of a larger project called the South Texas Expansion Project, Gutierrez and Turrent sought to build a 14-mile pipeline, called the Pomelo Connector, connecting to the Texas Eastern pipeline. (Anson Decl. ¶¶ 57–61). Gutierrez, Turrent, and Calhoun developed a four-way transaction in which (1) CFE awarded a special-purpose entity, Pomelo Connector LLC, partly owned by Antaeus Group, the rights to

construct the Pomelo Connector; (2) Pomelo Connector LLC purchased transportation rights on the Texas Eastern pipeline; (3) Pomelo Connector LLC leased these transportation rights back to Texas Eastern Transmission LP, the owner of the Texas Eastern pipeline; and (4) Texas Eastern Transmission LP in turn sold the packaged transportation rights to CFE, likely at a higher price than if CFE had contracted with Texas Eastern Transmission LP directly.  (Anson Decl. ¶¶ 60–64).  Notably, Pomelo Connector LLC never built the Pomelo Connector, and was instead acquired by Spectra Energy in December 2017.  (Anson Decl. ¶ 68).  Similar to TPP and CTP, there is no evidence that Calhoun, Pomelo Connector LLC, or Antaeus Group contributed equity or capital to the Pomelo Connector to earn an interest in the project.  (Anson Decl. ¶ 66).  It thus seems that the complex four-way transaction may have been structured to provide Antaeus Group (and thus Calhoun and potentially Gutierrez) with an unearned financial interest in the project to the detriment of CFE and CFEi.

In addition, as before, Gutierrez's characterizations to CFEi's outside counsel of the propriety of the Pomelo Connector transactions disclosed neither Calhoun's nor Antaeus Group's involvement, let alone financial stake, in the Pomelo Connector.  (Anson Decl. ¶ 69).

### 4.    The Waha Supply Agreement

As described above, the Waha Connector Agreements involved WWM's building the Waha Connector pipeline, transporting natural gas along it, and marketing the pipeline's capacity.  While Gutierrez and Turrent were negotiating the Waha Connector Agreements with WWM, they simultaneously negotiated a major long-term natural gas supply contract for West Texas that would use the Waha Connector pipeline:  the "Waha Supply Agreement" or "West Texas Supply Agreement."  Specifically, the Waha Supply Agreement, executed in March 2017, calls for WWM to deliver up to one million MMBtu per day of natural gas to CFEi for a 15-year

term "[a]t the inlet to Waha Connector, to be measured at the interconnect between Waha Connector and Waha Header." (Anson Decl. ¶ 81).

The Waha Supply Agreement is closely linked to the Waha Connector Agreements—the subject of the Mexican Criminal Proceeding—in several ways. Notably, the gas for the Waha Supply Agreement flows along the Waha Connector pipeline, which WWM built pursuant to the Waha Connector Agreements. Thus, without the Waha Connector Agreements, WWM would not have been able to supply gas under the Waha Supply Agreement at anywhere near the same cost, or potentially at all. (Anson Decl. ¶ 89). From a commercial perspective, the Waha Connector pipeline is of little use to CFEi because it terminates at the Waha Header, which was already connected to extensive natural gas pipeline infrastructure before the Waha Connector pipeline was built. However, the Waha Connector pipeline *does* connect to WWM's Agua Blanca pipeline system, which previously did not connect to the Waha Header. This indicates that the likely true purpose of the Waha Connector Agreements was to put WWM in position to win the Waha Supply Agreement by paying for WWM to build a connection to its own pipeline system, which it would use to flow CFEi's gas. (Anson Decl. ¶¶ 90–91). As further evidence that the transactions were linked, in May 2016, Gutierrez, Turrent, and WWM agreed to a Memorandum of Understanding to enter into both "long-term natural gas sales agreements" in West Texas—the genesis for the Waha Supply Agreement—and "associated asset management agreements"—which later became part of the Waha Connector Agreements. (Anson Decl. ¶ 82).

As with the Waha Connector Agreements, Gutierrez and Turrent appear to have awarded the Waha Supply Agreement to WWM without an arm's-length tender process, in violation of Mexican procurement law. As mentioned above, Gutierrez and Turrent caused CFEi to agree to a Memorandum of Understanding with WWM related to the Waha Supply Agreement

in May 2016. But CFEi did not issue a public request for offers ("RFO") for the Agreement until two months later, in July 2016. (Anson Decl. ¶ 86). During the RFO process, Gutierrez and Turrent hired the same consultant as WWM—a long-time colleague of Turrent and Calhoun (and current WWM executive) named Arlin Travis—who appears to have worked both sides of the deal by drafting both CFEi's RFO and WWM's "winning" bid. (Anson Decl. ¶¶ 83–87). Evidence also suggests that, when CFEi's quantitative analysts determined that WWM's bid was not among the most competitive bids, Turrent intervened and had them use a new formula that favored WWM. (Anson Decl. ¶ 88).

### 5. The South Texas Supply Agreement

Shortly after Gutierrez and Turrent caused CFEi to award the Waha Supply Agreement to WWM, they negotiated another major natural gas supply deal with WWM: the "South Texas Supply Agreement." This Agreement, awarded in February 2018, calls for WWM to deliver up to one million MMBtu per day of natural gas to CFEi for a 15-year term at CFEi's Nueces Header in South Texas via a "long-haul" pipeline that WWM uses to transport gas from the Permian Basin in West Texas. (Anson Decl. ¶ 93).

As with previous transactions, Gutierrez and Turrent appear to have steered the procurement process for the South Texas Supply Agreement to select WWM. Gutierrez and Turrent chose WWM despite WWM's bid, on its face, appearing to be one of the most expensive submissions. (Anson Decl. ¶¶ 94–96). Gutierrez and Turrent appear to have made this choice without any rigorous quantitative analysis, potentially because any such analysis would have disfavored WWM's expensive bid. (Anson Decl. ¶¶ 94–96). They also awarded WWM the contract despite previously having agreed to a lower-cost supply agreement with another company that supplied close to the entire amount of gas called for in CFEi's RFO. (Anson Decl. ¶ 97). As a result, the gas WWM supplies under the South Texas Supply Agreement is often unnecessary

excess gas that CFEi must resell. (Anson Decl. ¶ 100). Gutierrez and Turrent justified this excessive contract to the boards of directors of CFEi and CFE by making misleading representations about projected Mexican natural gas demand over the contract's lifetime and about certain terms in WWM's bid. (Anson Decl. ¶ 100).

Taken as a group, the actual or potential transactions outlined above demonstrate a continued course of conduct in which Gutierrez, Turrent, and Calhoun improperly attempted to direct business to Calhoun on terms that did not benefit CFE and to award Calhoun and his affiliated entities with an unearned interest in transactions with CFE. Discovery relating to these arrangements is thus likely to shed light on the relationship among Calhoun, Gutierrez, and Turrent and the similar scheme alleged in the Mexican Criminal Proceeding, and on personal benefits Gutierrez may have received from this scheme through JG Energy.

### C. Background Information about the Business of JG Energy

Finally, as necessary background for the topics above, CFEi also requests limited, general information about JG Energy's business.

### SECTION 1782 ENTITLES CFEI TO TAKE DISCOVERY FROM JG ENERGY

### I. CFEi's Application Meets Section 1782's Threshold Requirements

Pursuant to 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."

In order to obtain discovery pursuant to Section 1782, a party must satisfy three threshold requirements: (1) the person or entity from whom discovery is sought must reside or be found in the district where the application is filed; (2) the discovery must be for use in a proceeding in a foreign or international tribunal; and (3) the application must be made by a foreign or

international tribunal or "any interested person." 28 U.S.C. § 1782. This Application satisfies each of these requirements.

*First*, JG Energy resides in this district. Publicly available information confirms that JG Energy's current principal place of business is 7507 Cuadro Lane, Houston, TX 77055. (Anson Decl. ¶ 15). An entity "resides or is found" for the purposes of Section 1782 in the district where it is headquartered or maintains its principal place of business. *See LEG Q LLC* v. *RSR Corp.*, No. 3:17-CV-1559-N-BN, 2017 WL 3780213, at *6 (N.D. Tex. Aug. 31, 2017).

*Second*, the discovery is sought for use in the ongoing Mexican Criminal Proceeding. Section 1782 expressly allows a court to authorize discovery for use in criminal investigations, including criminal investigations "conducted before formal accusation." 28 U.S.C. § 1782. Discovery is deemed "for use" in a foreign proceeding if it helps to "determine the nature of the relationships and interactions between the parties" to the foreign proceeding, one of the key purposes for which discovery is sought here. *In re Request for Judicial Assistance from the Consumer Court of Istanbul in Istanbul, Turkey*, 2021 WL 6750936, at *2 (W.D. Tex. June 11, 2021).

Here, under the Mexican National Criminal Procedure Code ("CNPP"), CFEi had a duty to report its knowledge of Gutierrez's and Turrent's potential crimes to the Mexican Attorney General's Office. (Aponte Decl. ¶¶ 19–20). CFEi has already provided Mexican prosecutors with information relating to their ongoing investigation and intends to continue to present evidence as an independent party in the criminal proceedings. (Aponte Decl. ¶ 35). Moreover, as described above, the discovery sought through this application will further the Mexican prosecutors' understanding of the nature of the relationship among Gutierrez, Turrent, and WWM and the deals they orchestrated together.

*Third*, CFEi is an interested party in the foreign proceeding, as it is both a victim of its former executives' alleged violations of the Mexican Constitution, criminal code, and procurement laws, and is the party that filed the criminal complaint triggering the investigation. The term "interested party" as used in Section 1782 extends beyond litigants in the foreign proceeding and includes a complainant whose complaint triggers an investigation, as well as the victim in the proceedings. *See Intel*, 542 U.S. 241 at 256–57; *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 372 (S.D.N.Y. 2019) (complainant in a criminal investigation satisfies the "interested person" requirement of § 1782) (citation omitted); *Matter of Application of O2CNI Co., Ltd.*, 2013 WL 5826730, at *11 (N.D. Cal. Oct. 29, 2013) ("an 'interested person' is one who possesses a reasonable interest in obtaining [judicial] assistance and includes a complainant who triggers an investigation by a state investigative body") (internal quotation marks omitted); *In re Caceres*, 2020 WL 2523120, at *2 (S.D. Miss. May 18, 2020) (complainant triggering foreign proceeding with the right to submit evidence qualified as an "interested person" under Section 1782).

Significantly, here, under Mexican law, as the owner of assets affected by Gutierrez's and Turrent's suspected criminal acts, CFEi is an "injured party" as defined by the CNPP. (Aponte Decl. ¶ 21). As such, CFEi has significant participation rights in the criminal investigation in Mexico. (Aponte Decl. ¶¶ 21–23). Among these is the right to participate in the criminal proceedings as an independent party called a *coadyuvante*, capable of presenting evidence, arguments, and demands. (Aponte Decl. ¶¶ 24–27). The CNPP allows victims to present any lawfully obtained evidence. *Id.* After an indictment is filed by the prosecutors, the injured party may also request corrections to the indictment and offer additional evidence that it believes further supports the indictment. *Id.*

Given CFEi's interest in the investigation as the complaining victim, its prior provision of information for use in the investigation to the Mexican authorities, and its ongoing ability to provide information, it clearly qualifies as an interested party under Section 1782.

## II. CFEi's Application Also Meets the Discretionary Factors Courts Consider in Granting Section 1782 Applications

The Supreme Court has directed district courts to consider four factors in exercising their discretion to grant a Section 1782 application: (1) whether the entity from which discovery is being sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign court to U.S. federal-court assistance; (3) whether the Section 1782 request is merely "an attempt to circumvent foreign proof gathering restrictions" or policies of a foreign country; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *Intel Corp.*, 542 U.S. at 264–65. As detailed further below, each factor weighs heavily in favor of granting the requested discovery here.

### A. JG Energy Is Not a Participant in the Mexican Criminal Proceeding

JG Energy is not a participant or party to the Mexican Criminal Proceeding. (Aponte Decl. ¶ 28). That Gutierrez is a participant in the Mexican Criminal Proceeding is of no consequence; JG Energy and Gutierrez are properly treated as separate entities for the purpose of this factor. *See Kestrel Coal Ply, Ltd.* v. *Joy Global Inc.*, 362 F.3d 401, 405 (7th Cir. 2004) ("Legal distinctions between corporations and their investors (even owners of 100% of the stock . . . ) are embedded in both statute and common law. Section 1782(a) itself neither instructs, nor permits, courts to disregard the distinction between the corporation that owns a set of documents, and a different corporation that owns stock in the first entity") (citation omitted); *In re Application for an Ord. for Jud. Assistance in a Foreign Proceeding in the Lab. Ct. of Brazil*, 466 F. Supp. 2d

1020, 1031 (N.D. Ill. 2006) ("McDonald's is not a party in the Labor Court. Its wholly-owned subsidiary, McCal, is the party").

There is no established procedure in place for CFEi to obtain and introduce the evidence sought from JG Energy in this Application into the proceedings, absent granting of the Application. *Id.*[5] Rather, the documents and information sought by this application are located in the United States, and are outside of CFEi's reach through recourse to Mexican courts. *Id. See Intel*, 542 U.S. at 264 ("nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").

## B.    The Mexican Authorities Are Receptive to U.S. Judicial Assistance

The second *Intel* factor considers the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government to U.S. judicial assistance. 542 U.S. at 264. As an initial matter, the receptivity of the Mexican authorities to information provided by CFEi is already clearly established: the criminal investigation is premised on such information. (Aponte Decl. ¶¶ 30–35).

Moreover, in the absence of a "clear directive" that the Mexican authorities would reject evidence obtained under Section 1782, this factor weighs in favor of exercising discretion to grant a section 1782 application. *Ecuadorian Plaintiffs* v. *Corp.*, 619 F.3d 373, 377 (5th Cir. 2010); *see also In re Application of Eurasian Bank Joint Stock Co.*, 2015 WL 6438256, at *3 (N.D. Tex. Oct. 21, 2015). A negative directive is "clear" if it is "embodied in a forum country's judicial,

---

[5]    It is not uncommon for a civil-law system, like Mexico's, to lack the pretrial discovery system that exists in the U.S. *See Intel*, 542 U.S. at 261, n.12 ("The drafters of § 1782 were quite aware of the circumstance that civil law systems generally do not have American type pretrial discovery, and do not compel the production of documentary evidence.") (quoting Smit, *Recent Developments in International Litigation*, 35 S. Tex. L. Rev. 215, 235, n. 93 (1994)).

executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *In re Sarrio S.A.*, 173 F.R.D. 190, 196 (S.D. Tex. 1995) (citation omitted). There is no such directive here. To the contrary, Mexico's CNPP specifically allows for the victim of a crime to participate in the criminal proceedings as an independent party with the right to share evidence with prosecutors or present evidence, arguments, and demands of its own accord. (Aponte Decl. ¶¶ 21–27). *See Grupo Mexico Sab De CV*, 2014 WL 12691097, at *3 (N.D. Tex. Oct. 17, 2014) (finding no authoritative evidence that a Mexican court would reject additional evidence); *see also In re Application of Qumma*, 2005 WL 937486, at *3 (S.D.N.Y Apr. 22, 2006) (same).

Additionally, prior cases have recognized the receptivity of Mexican courts to evidence obtained through Section 1782. *See Grupo Mexico*, 2014 WL 12691097, at *3; *In re Application of Qumma*, 2005 WL 937486, at *3. Moreover, the U.S. District Court for the Western District of Texas has previously granted an application seeking related discovery in connection with the Mexican Criminal Proceeding. *See* Antaeus Group Order.

Therefore, it is clear that the Application satisfies the discretionary factor of the receptivity of Mexican authorities to U.S. judicial assistance.

### C.    This Application Is an Attempt to Obtain Probative and Relevant Evidence for a Foreign Proceeding, and in No Way Circumvents Foreign Proof-Gathering Restrictions

In determining whether an application constitutes an effort to circumvent foreign proof-gathering restrictions, the district court will assess whether the discovery is being sought in bad faith. *Minatec Fin. S.A.R.L.* v. *SI Group Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y Aug. 18, 2008) ("The primary issue for us is whether [the applicant] is pursuing this discovery in bad faith."). Of particular concern are applications that seek to end-run a previous unfavorable ruling by the foreign tribunal. *See In re Microsoft Corp.*, 428 F. Supp. 2d

188, 196 (S.D.N.Y. 2006), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).

That is not the case here. As discussed above, CFEi has the ability to present the Mexican Special Anti-Corruption Prosecutor investigating the conduct at issue with relevant documents and information and to act as a "party" to the proceeding. (Aponte Decl. ¶¶ 21–27). CFEi's request for discovery from JG Energy is a good faith effort to obtain probative evidence relating to Gutierrez's possible enrichment through JG Energy in connection with the Waha Connector Agreements and other transactions that relate to the Mexican Criminal Proceeding.

**D.     The Discovery Sought Is Not Unduly Intrusive or Burdensome**

The documents and testimony sought by CFEi are neither intrusive nor unduly burdensome. The discovery sought here is tailored to activities, communications, and transfers of funds between and among JG Energy, WWM or CFEi, their principals, or any entity affiliated with them. It seeks to obtain information about the scope of the misconduct and procurement violations at issue in the Mexican Criminal Proceeding, as well as information relating to other relevant and connected misconduct on the part of Gutierrez and Turrent. Such discovery clearly falls well within the scope of discovery permitted by the Federal Rules. *See Chevron Corp.* v. *3TM Consulting,* LLC, 2010 WL 8814519, at *1 (S.D. Tex. Apr. 5, 2010) (discovery requests not unduly intrusive or burdensome where information sought went to central issues in foreign proceeding and would have been permitted under the Federal Rules of Civil Procedure).

## CONCLUSION

For all the foregoing reasons, CFEi respectfully requests that the Court enter an order, pursuant to 28 U.S.C. 1782, granting it leave to serve JG Energy with the subpoenas annexed to the Application as Exhibits 1 and 2.

Dated: Houston, Texas
      May 24, 2022

REED SMITH LLP

By: */s/ William W. Russell*
William W. Russell
State Bar No. 00794573
Fed. Bar No. 200426
811 Main Street, Suite 1700
Houston, TX 77002
Phone: 713.469.3800
Facsimile: 713.469.3899
wrussell@reedsmith.com

     - and -

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP

Michael E. Gertzman (*pro hac vice* pending)
Mark F. Mendelsohn (*pro hac vice* pending)
Harris Fischman (*pro hac vice* pending)
Justin D. Lerer (*pro hac vice* pending)
Maria H. Keane (*pro hac vice* pending)
1285 Avenue of the Americas
New York, New York 10019-6064

*Attorneys for Applicant CFE International LLC*